*989 OPINION OF THE COURT
George M. Heymann, J.
Petitioners commenced this holdover proceeding by service of a 30-day notice of termination, on or about March 22, 2006, electing to terminate the respondent’s tenancy on April 30, 2006. The respondent, who is 94 years old, resides in the top floor apartment of a three-family dwelling located at 85 Woodhull Street, Brooklyn, New York 11231.
On July 20, 2006, the parties and their attorneys entered into a “so ordered” stipulation which provided for a final judgment of possession, warrant to issue forthwith, execution stayed through December 31, 2006, at which time the respondent agreed to vacate the subject premises. In consideration thereof, the petitioners agreed to waive the arrears to date plus the future use and occupancy through December 31, 2006.
On January 10, 2007, counsel for the respondent obtained an order to show cause (OSC) from the court which sought to stay execution of the warrant of eviction to allow the respondent additional time to relocate. The respondent’s eviction was scheduled for Thursday, January 18, 2007. The OSC was returnable on Friday, January 19, 2007.
On Friday, January 19, 2007, the court conducted a hearing on the motion. As noted by the petitioners’ attorney, in opposition to the motion, the six-month stay period, as set forth in Real Property Actions and Proceedings Law § 753 (1), was to expire the next day, Saturday, January 20, 2007.
Testifying on behalf of the respondent was a representative from the New York City Department for the Aging who stated that, as a result of recent publicity regarding the respondent’s plight,[1] the agency was working diligently to relocate the respondent within the next several weeks and that several individuals came forward to offer financial assistance to pay a month’s rent at a fair market value of $2,000[2] for the additional time.
Question Presented
The issue before the court is whether the court could grant an additional stay of execution of the warrant beyond the *990 stipulated six-month stay period to enable a 94-year-old tenant, who has resided in the subject premises for two decades, the opportunity to be relocated with the assistance of the New York City Department for the Aging.
Discussion and Conclusions of Law
The petitioners herein oppose the granting of additional time based on the fact that the six-month stay period set forth in RPAPL 753 (1) does not give this court the discretion to extend the stay beyond that time.[3] The attorney for the respondent cites and relies on the decision of New York City Hous. Auth. v Witherspoon (12 Misc 3d 899 [2006]) as authority for enabling this court to grant the additional stay.
For the reasons set forth below, the court grants the respondent’s motion for additional time to relocate.
In general, New York City Civil Court Act § 110 (a) grants the housing court power to grant equitable relief to enforce state and local laws for the establishment and maintenance of housing standards. Similarly, case law has supported the court’s discretionary powers to apply and/or interpret statutes to provide equitable relief, in the interests of justice, to avoid forfeitures and homelessness where the unique facts of a particular case warrants such relief.
For example, in Hudson Towers Assoc. v Rubackin (NYLJ, Sept. 2, 1998, at 24, col 3, affd NYLJ, Mar. 19, 1999, at 26, col 2 [App Term, 1st Dept]), the issue was whether the respondent duly executed a renewal lease within the 10-day stay period provided by the court in its prior order,[4] and, if not, did the court have the authority, under existing statutory and case law, to extend the stay beyond said 10 days to avoid forfeiture of the 35-year tenancy of the respondent and his infirm wife, both of whom were senior citizens over 80 years of age. In that case, this court, for the reasons stated therein, granted an additional 10-day cure period and the Appellate Term held that “it was not an abuse of discretion to afford tenant a further and final opportunity” to cure in order to preserve a long-term tenancy (NYLJ, Mar. 19, 1999, at 26, col 2).
*991 Although Rubackin pertains to subdivision (4) of RPAPL 753 (cure period),[5] as opposed to subdivision (1) (stay period) in the case at bar, the underlying issue and the reasoning for the court’s authority and discretion to fashion an appropriate remedy to avoid the deleterious effects of eviction on a vulnerable segment of our society is applicable to both scenarios.
In general, courts abhor the forfeiture of a leasehold estate as a result of the “dire consequences” that the tenant is faced with when forced to vacate the premises. (See, 2256 H. G. Walton Corp. v Morris, NYLJ, Jan. 17, 1990, at 23, col 2.)
In the recent case of New York City Hous. Auth. v Witherspoon (supra), this court thoroughly examined the language of RPAPL 753 (1) and interpreted the statute as follows:
“While it has become the common practice in the Housing Court to view RPAPL 753 (1) as completely removing the court’s jurisdiction to grant any further stays beyond six months after the entry of a final judgment or the issuance of a warrant based upon that judgment in holdover proceedings, the statute, as set forth above, actually makes no reference whatsoever to staying the ‘execution’ of the warrant, just the ‘issuance’ thereof. As can be seen, the word ‘execution’ in said statute makes no reference to its application vis-a-vis the warrant, but merely refers to the collection of the ‘costs of the proceeding’ and not the recovery of the subject premises for which the judgment of possession is entered. Notwithstanding this omission, it has become routine for courts to interchange the terms ‘issuance of the warrant’ and ‘execution of the warrant’ yielding the same result: i.e.: that the total period of a stay of the ‘execution’ of the warrant cannot exceed six months inclusive of the issuance of the warrant.” (Id. at 903-904.)
“As there is no memorandum of legislative intent or Governor’s memorandum printed in McKinney’s Session Laws of 1962 with regard to section 21 of chapter 312 of the Laws of 1962, which created *992 RPAPL 753, it becomes a matter of conjecture and usage over a period of time as to whether the six-month limitation was intended to be inclusive or exclusive of the execution of the warrant after issuance. Had the Legislature intended that the stay-provisions in holdover proceedings be guided only by the court’s discretion, on a case-by-case basis without more, it would have ultimately eliminated the six-month limitation for such proceedings within the City of New York as it did with the four-month limitation for cities outside of New York.” (Id. at 910.)
“As previously noted, tradition and custom and usage have dictated that stays of ‘execution’ of a warrant in holdover proceedings will generally not exceed six months, inclusive of the issuance of the warrant. Barring further clarification by the Legislature and/or the appellate courts, this seems to be a reasonable and practicable approach in disposing of such matters. In those instances where exceptional, extenuating or exigent circumstances warrant a different result, the courts, as has been demonstrated, can, and will, fashion a remedy to bring about just results.” (Id. at 910-911 [emphasis added].)
Notwithstanding this court’s interpretation of subdivision (1) of RPAPL 753 in Witherspoon, the respondent’s request for more time in that case was denied in that the petitioners’ inaction in seeking an eviction for more than six months beyond the original six months stipulated to had already inured to the respondent’s benefit and granting more time would have been an abuse of discretion.
In the instant matter, however, it is the court’s opinion that this is exactly the type of case “where exceptional, extenuating or exigent circumstances warrant a different result... to bring about just results.” (12 Misc 3d at 911.) In light of the representations made that the respondent’s departure would be imminent, and taking into consideration the age of the respondent who has resided in the subject premises for over 20 years, what purpose would be served in forcing him into a shelter at this juncture? Clearly, the prejudice to the respondent far outweighs any prejudice to the petitioners, especially since the petitioners will be paid $2,000 for the additional time to be granted. As respondent’s prior rent/use and occupancy was $500 per month, the petitioners are receiving the equivalent of four months’ rent for only a four-to-six-week extension.
*993 In general, courts abhor the forfeiture of a leasehold estate as a result of the “dire consequences” that the tenant is faced with when forced to vacate the premises. (See, 2256 H. G. Walton Corp. v Morris, supra at 23, col 3.)
As the court in Central Brooklyn Urban Dev. Corp. v Copeland (122 Misc 2d 726, 730 [1984]) clearly stated: “ ‘The law is not a rigid set of rules totally divorced from all sense of fair play.’ ”
“Although the issuance of a warrant of eviction acts to terminate the landlord-tenant relationship (RPAPL 749 [3]; Iltit Assoc, v Sterner, 63 AD2d 600), the proceeding remains pending until the warrant’s execution. As long as the tenant remains in legal possession, the court retains jurisdiction to take, or terminate, any steps in the proceeding it deems necessary in the interest of justice. (Joseph v Cheeseboro, 42 Misc 2d 917, revd on other grounds 43 Misc 2d 702)” (Lindsay Park Houses v Greer, 128 Misc 2d 775, 776 [1985] [some citations omitted]).
As further set forth in Lindsay Park Houses v Greer (id. at 778): “[T]he Housing Court [is] intended as a forum for the just resolution of Landlord-Tenant disputes . . . This court’s exercise of its discretion on behalf of respondent is only reasonable and just under the circumstances of this matter.”
Accordingly, for the reasons stated above, the respondent’s motion is granted, in the interest of justice, to the extent of staying execution of the warrant through February 28, 2007, for the respondent to vacate the subject premises. The respondent is directed to tender $2,000 no later than January 22, 2007, all payments, other than cash, subject to collection. At the request of petitioners’ counsel, the marshal may pre-serve the notice of eviction by regular mail. The marshal is directed to notify Adult Protective Services prior to any scheduled eviction.

. Although the court was unaware of any publicity on this matter prior to the hearing, the court was informed that there were stories on local television regarding this matter as well as a story in today’s Daily News titled: “Carroll Gardens widower is fighting eviction - at 94” (Jan. 1, 2007, Brooklyn News, at 2).

. The respondent’s last rent at the time this action was commenced was $500.

. During the argument, in response to the court’s inquiry, the petitioners’ attorney stated that his clients would be willing to stay execution through January 31, 2007. However, the representative from the Department for the Aging indicated that it would need a few additional weeks beyond that date.

. See, Hudson Tower Assoc. v Rubackin, NYLJ, Apr. 29, 1998, at 27, col 2 (Heymann, J.).

. The importance of giving tenants the opportunity to cure lease violations was brought to the fore by the Court of Appeals in Matter of ATM One v Landaverde (2 NY3d 472 [2004]) which added five days to the service of a 10-day notice to cure. For an overview of the applicability of Landaverde to various notices, see 135 PPW Owners LLC v Schwartz (NYLJ, May 4, 2005, at 28, cols 1, 4 n 2 [Heymann, J.]).